## ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
█████████████████████ ) ASBCA No. 60841
)
Under Contract No. W56KJD-13-P-0079 )

APPEARANCE FOR THE APPELLANT: █████████████████
CEO and President

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
Army Chief Trial Attorney
CPT William T. Wicks, JA
Trial Attorney

### OPINION BY ADMINISTRATIVE JUDGE PROUTY

Sometime after the receipt of this appeal from appellant, we became concerned that we might not possess jurisdiction to consider it because the claim upon which the appeal is premised was not signed, thus calling into question its certification. After requesting, receiving, and considering briefing from the parties, we conclude that our concerns were justified: this appeal is dismissed because the lack of an actual signature upon the claim prevents the certification from being effective, and the amount of money being sought in this appeal requires a certified claim.

### FINDINGS OF FACT

On 2 November 2012, appellant was awarded Contract No. W56KJD-13-P-0079, a firm-fixed-price contract for 10,108,638.54 Afghani, or approximately $207,900, by the General Support Contracting Center, Camp Phoenix, Afghanistan (Army) for the delivery of gravel to FOB Warrior in Afghanistan (R4, tab 1). After delivery, appellant received payment by electronic fund transfer voucher dated 21 March 2013 (R4, tab 6).

In early 2016, appellant filed an appeal, docketed as ASBCA No. 60702, seeking payment for gravel allegedly provided, but not paid for. In ASBCA No. 60702, appellant informed us that it had not filed a claim with the contracting officer (CO), but intended to do so. On 1 August 2016, we informed the parties that, absent objection, we intended to dismiss the appeal within 14 days due to the lack of a claim. On 17 August, not having received any objection, we dismissed the appeal without prejudice to appellant's submitting a claim to the CO.

By email dated 2 August 2016 (after being informed of the pending dismissal, but before it became effective), appellant sent a document entitled "Certified Claim Letter" to the CO at Army Contracting Command, Rock Island Arsenal – Closeout Division, Ms. Celeste Hobert, seeking $231,000, for gravel purportedly requested by the government after the original contract performance was completed, but never memorialized by contract modification. The correspondence included the following:

> *I Certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the adjustment for which the [sic] we believe[] the Government is liable; and that I am authorized to certify the claim on the behalf of the our company.*
>
> bellow [sic] are proof of the contract, invoice, extra work, if you have questions please let me know, thank you very much.
>
> Sincerely,
>
> [REDACTED][1]

(R4, tab 8 at 53-54) No handwriting or electronic signature appears on the signature block or anywhere else on this letter.

The CO denied appellant's request by decision dated 3 October 2016[2] (R4, tab 9). Appellant appealed the CO's decision by correspondence dated 10 October 2016 to the Board. The appeal was docketed 12 October 2016 as ASBCA No. 60841. Appellant's correspondence initiating this appeal included the CO's final decision and a document titled, "Appeal contracting officer decision & Certified Claim Letter for

---

[1] We have redacted the entire signature block from our published opinion because appellant asked us to minimize the use of its name and contact information for reasons of personal security. This is why we refer to appellant as "appellant" throughout, rather than by name, as we would otherwise prefer. The redacted signature block included the name of the CEO of the company, the company name, its address and other contact information.

[2] The decision was reissued 3 November 2016 due to a typographical error misidentifying appellant's name in the earlier decision (R4, tab 10).

ASBCA No. 60702."[3] There is no handwriting or electronic signature on this document, and it is identical in every way to the "Certified Claim Letter," except for its title and two other portions of the document in which it corrects the CO's misstatement of the contractor's name.

After we reviewed the Rule 4 file submitted by the government, which included the apparently-unsigned certified claim, we issued an order on 21 November 2016, directing the government to provide a signed version of the certified claim.

The next day, 22 November 2016, appellant (without prompting) emailed the Board a short note with five attachments. One, titled "Certified Claim Letter," is identical to the claim document described above, including the fact that it is unsigned. Appellant also included a copy of the document entitled, "Appeal contracting officer decision & Certified Claim Letter for ASBCA No. 60702," which was identical to the like-titled document attached to its appeal to the Board, including the fact that it was unsigned. But the attachments to the email included a pdf file entitled, "signed Certified Claim and contracting officer final decision." The first document in this attachment bears a handwritten title, "Certified Claim," and includes, at the bottom of the page, a signature by appellant's representative above his printed name. The second document in this attachment is titled, "Appeal contracting officer decision & Certified Claim Letter for ASBCA No. 60702." This is a copy of appellant's notice of appeal in this appeal, received by the Board 11 October 2016. However, the copy in appellant's 22 November 2016 email attachment includes a signature above appellant's representative's printed name that was not present on the notice of appeal received by the Board 11 October 2016.

The government's 5 December 2016 response to the Board's 21 November 2016 order stated that the government did not possess any signed copy of the claim to the CO.

From these facts, we conclude that the signatures upon the documents in the "signed Certified Claim and contracting officer final decision" attachment to appellant's 22 November 2016 email were added after the claim's denial was appealed to the Board, perhaps in an effort to allay our jurisdictional concerns. This conclusion does not mean that we believe appellant necessarily intended to mislead or deceive us (if it did, its submission, on 22 November 2016, of a signed copy of the appeal document that it had originally submitted to us without a signature would have plainly sabotaged that effort), for we can imagine an innocent explanation for the addition of the signatures, but the lack of signatures on the original claim has significant consequences.

---

[3] ASBCA No. 60702, the reader may recall, is appellant's earlier appeal which was dismissed without prejudice on 17 August 2016.

## DISCUSSION

This matter is relatively straightforward: as is demonstrated below, we do not possess jurisdiction to consider the appeal of a claim in the amount of more than $100,000, such as the one presented here, if the claim isn't properly certified. And proper certification requires a signature, which is missing here. Thus, the appeal must be dismissed.

The Contract Disputes Act, 41 U.S.C. §§ 7101-7109, (CDA), requires the certification of contractor claims "of more than $100,000." 41 U.S.C. § 7103(b). This certification is required to be "executed by an individual authorized to bind the contractor with respect to the claim" and must state that:

> (A) the claim is made in good faith;
> (B) the supporting data are accurate and complete to the best of the contractor's knowledge and belief;
> (C) the amount requested accurately reflects the contract adjustment for which the contractor believes the Federal Government is liable; and
> (D) the certifier is authorized to certify the claim on behalf of the contractor.

41 U.S.C. § 7103(b).

"It is well settled that certification is a jurisdictional prerequisite for this Board for contractor claims over $100,000." *Special Operative Group, LLC*, ASBCA No. 57678, 11-2 BCA ¶ 34,860 at 171,480 (citations omitted). Although a defective certification does not deprive the Board of jurisdiction, 41 U.S.C § 7103(b)(3), the failure to certify at all does deprive the Board of jurisdiction and mandates dismissal. *Special Operative Group*, 11-2 BCA ¶ 34,680 at 171,480; *CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,816; *Baghdadi Swords Co.*, ASBCA No. 58539, 13 BCA ¶ 35,395 at 173,665.

And, as far as the law is concerned, an unsigned certification is considered to be not merely defective, but not certified at all. This is because the "execution" of a CDA certification requires a "certifier to sign the claim certification," *Teknocraft Inc.*, ASBCA No. 55438, 08-1 BCA ¶ 33,846 at 167,504 (citing *Hawaii CyberSpace*, ASBCA No. 54065, 04-1 BCA ¶ 32,455 at 160,535), thus making the failure to sign the certification language into the equivalent of "failure to certify," which may not be remedied. *Hawaii CyberSpace*, 04-1 BCA ¶ 32,455 at 160,535; *see also Tokyo Company*, ASBCA No. 59059, 14-1 BCA ¶ 35,590 at 174,392.

The typed signature block that appellant utilized to "sign" his claim is not a signature for purposes of the CDA's certification requirement. The CDA does not define "signature," but that term is defined in the Federal Acquisition Regulation (FAR) as "the discrete, verifiable symbol of an individual which, when affixed to a writing with the knowledge and consent of the individual, indicates a present intention to authenticate the writing. This includes electronic systems." FAR 2.101. Applying this definition, we have previously held that a typed but unsigned name is not sufficiently discrete or verifiable to satisfy the CDA requirement that the certification be signed. *Tokyo Company*, 14-1 BCA ¶ 35,590 at 174,392; ███████████ ████████████████████, ASBCA No. 60444, 16-1 BCA ¶ 36,558 at 178,049.

Here, we are presented with the same sort of unsigned, typed signature block that we rejected in *Tokyo Company* and ██████████. The result is the same: we conclude that appellant's claim is not certified and must be dismissed. Appellant's argument, that it submitted a signed claim on 22 November 2016 in response to our order to the Army, does not change the result. As discussed above, an uncertified claim may not be remedied by amendment after the submission of the appeal. *Suodor Al-Khair Co – SAKCO for General Trading*, ASBCA Nos. 59036, 59037, 15-1 BCA ¶ 35,964 at 175,726.

## CONCLUSION

We recognize that this second dismissal of its appeal will almost certainly be frustrating to appellant. Nevertheless, the certification requirement exists for good reason and we are not free to deviate from its dictates.

This appeal is dismissed without prejudice to appellant's submission of a properly certified claim to the CO.

Dated: 3 April 2017

J. REID PROUTY
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

5

I concur

_(signature)_

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

_(signature)_

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60841, Appeal of ███████ ██████████████████, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

6